Approved: _____
          DANIEL C. RICHENTHAL
          Assistant United States Attorney

Before:   THE HONORABLE HENRY B. PITMAN
          United States Magistrate Judge
          Southern District of New York

ORIGINAL
DOC # 1

FILED
FEB 22 2015
U.S. DISTRICT COURT
S.D. OF N.Y.

15 MAG 535

- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA             :     SEALED COMPLAINT
                                     :
        - v. -                       :     Violation of
                                     :     18 U.S.C. §§ 1349, 1341, and
IGOR FAINSHTEIN and                  :     1347
YELENA FAINSHTEIN,                   :
   a/k/a "Yelena Baranovich,"        :     COUNTY OF OFFENSE:
   a/k/a "Yelena                     :     NEW YORK
           Baranovich-Fainshtein,"   :
                                     :
                 Defendants.         :
                                     :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        VITALY ZUBRY, being duly sworn, deposes and says that he
is a Special Agent with the United States Department of Health and
Human Services ("HHS"), Office of Inspector General ("HHS-OIG"), and
charges as follows:

COUNT ONE
(Conspiracy to Commit Mail Fraud and Health Care Fraud)

        1.   From at least in or about January 2009 up to and
including in or about December 2012, in the Southern District of New
York and elsewhere, IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a
"Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the
defendants, willfully and knowingly did combine, conspire,
confederate and agree together and with each other to violate Title
18, United States Code, Sections 1341 and 1347.

        2.   It was a part and an object of the conspiracy that
IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich,"
a/k/a "Yelena Baranovich-Fainshtein," the defendants, having
devised and intending to devise a scheme and artifice to defraud,
and for obtaining money and property by means of false and fraudulent

pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited a matter and thing to be sent and delivered by private and commercial interstate carrier, and take and receive therefrom, such matter and thing, and knowingly would and did cause such matter and thing to be delivered by mail and by such carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, in violation of Title 18, United States Code, Section 1341, to wit, IGOR FAINSHTEIN and YELENA FAINSHTEIN agreed to submit fraudulent applications and fraudulent renewals for themselves and members of their family to receive federally-funded public health insurance, commonly known as Medicaid, and to cause mailings to be sent in furtherance of the scheme.

3.    It was a further part and an object of the conspiracy that IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, would and did execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises money and property owned by and under the custody and control of a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347, to wit, IGOR FAINSHTEIN and YELENA FAINSHTEIN agreed to submit fraudulent applications and fraudulent renewals for themselves and members of their family to receive federally-funded public health insurance, commonly known as Medicaid.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Mail Fraud)

4.    From at least in or about February 2010 up to and including in or about December 2012, in the Southern District of New York and elsewhere, IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting

so to do, placed in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing to be sent and delivered by private and commercial interstate carrier, and took and received therefrom, such matter and thing, and knowingly caused such matter and thing to be delivered by mail and by such carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, to wit, IGOR FAINSHTEIN and YELENA FAINSHTEIN submitted fraudulent application and fraudulent renewals for themselves and their family to receive federally-funded public health insurance, commonly known as Medicaid, and caused mailings to be sent in furtherance of the scheme.

(Title 18, United States Code, Sections 1341 and 2.)

COUNT THREE
(Health Care Fraud)

5.     From at least in or about February 2010 up to and including in or about December 2012, in the Southern District of New York and elsewhere, IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, executed a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises money and property owned by and under the custody and control of a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, IGOR FAINSHTEIN and YELENA FAINSHTEIN submitted a fraudulent application and fraudulent renewals for themselves and their family to receive federally-funded public health insurance, commonly known as Medicaid.

(Title 18, United States Code, Sections 1347 and 2.)

The bases for my knowledge and for the foregoing charge is, in part, as follows:

6.     I am a Special Agent with HHS-OIG and have been employed by HHS-OIG since 2011.  I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents, recordings, and conversations that I have had with other law enforcement agents and other individuals.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not

include all the facts that I have learned during the course of my investigation.  Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Background

7.    Based on my training and experience, my review of documents, and my conversations with others, I have learned the following:

a.    Various publicly-funded health insurance plans are available to low-income individuals and their children in New York State and elsewhere.  These plans include, among others, Medicaid, a health insurance program for low-income adults and children; and Family Health Plus, a health insurance program for lower-income adults who are not eligible for standard Medicaid ("Medicaid") because they have higher incomes than those eligible for Medicaid, but whose incomes are still below or near the federal poverty level, and who do not have private insurance.   Family Health Plus, Medicaid, and other similar publicly-funded health insurance plans (collectively, "public health insurance") fall within what is commonly referred to as the Medicaid Program, a health care benefit program as defined in Title 18, United States Code, Section 24(b).

b.    While the Medicaid Program is largely federally-funded, it is administered by the states.

c.    The New York State Department of Health (the "NY DOH") administers the Medicaid Program in New York State.   HHS provides more than $1 billion annually to the NY DOH to fund and/or reimburse the costs of the Medicaid Program.

d.    Local departments of social services within New York State process applications for health insurance plans falling within the Medicaid Program and monitor the provision of plans at the local level.

e.    In New York City, the department that administers the Medicaid Program is the Human Resources Administration ("HRA"), which is an agency of the City of New York. HRA processes applications for health insurance plans falling within the Medicaid Program in its office in New York, New York, and acts on behalf of NY DOH.

f.   New York State offers potential applicants health insurance plans falling within the Medicaid Program the ability to sign up for such plans not only with a local department of social services, but also through what is known as the Facilitated Enrollment Program ("FEP").   Under the FEP, the NY DOH enters into contracts with companies or organizations offering health insurance plans, such as a managed care plan, which are funded through the Medicaid Program, but are administered and branded privately by the company or organization offering the plan (the "Plan Organization"). In order to qualify for such plans, an individual must meet certain requirements, just as the individual would were he or she applying directly through a local department of social services.   These requirements include those regarding income, residence, and immigration status.

g.   A Plan Organization employs individuals, generally referred to as "Facilitated Enrollers," whose job is to provide application assistance to individuals applying for health insurance plans funded through the Medicaid Program, including screening individuals, collecting required documentation, and certifying that original documentation of eligibility has been provided.

h.   Once a Facilitated Enroller processes an application, it is transmitted to the Plan Organization, and then to the pertinent local department of social services for final approval, in this case, HRA's office in New York, New York.

i.   A Plan Organization receives money from NY DOH for administering a health insurance plan on an individual by individual basis, that is, the Plan Organization receives additional funds from NY DOH for each individual added to the Plan Organization's health insurance plan.   In addition, the Plan Organization receives funds from NY DOH for certain health services utilized by members of the Plan Organization's plan.

j.   Once an individual is approved by the local department of social services, the individual must renew his or her eligibility annually, certifying in writing that he or she continues to qualify.   The annual renewal is generally processed through the mail by the local department of social services, such as HRA.

Summary of the Scheme

8.    As set forth below, investigation has revealed that starting in or about January 2009, and continuing until in or about December 2012, IGOR FAINSHTEIN and his wife, YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, engaged in a scheme to obtain and maintain public health insurance for themselves and members of their family by submitting multiple fraudulent documents, including a doctored pay stub, and by concealing material facts, including their household income, thereby defrauding the Medicaid Program, and causing resources designed for low-income individuals to be diverted to themselves.

9.    As set forth below, misrepresentations made by the defendants included the following, among others:

| Document | False Representation | Reality |
|---|---|---|
| January 2009 Application of IGOR FAINSHTEIN | YELENA FAINSHTEIN had no earnings | YELENA FAINSHTEIN earned more than $50,000 |
| October 2009 Application of YELENA FAINSHTEIN | YELENA FAINSHTEIN had no earnings<br><br>No one in the household already received public health insurance | YELENA FAINSHTEIN earned more than $50,000<br><br>IGOR FAINSHTEIN and one of the defendants' children already received public insurance |
| November 2009 Renewal of IGOR FAINSHTEIN | No spouse or parent had access to private insurance | YELENA FAINSHTEIN's employer offered insurance for her and her family |
| July 2010 Renewal of YELENA FAINSHTEIN | YELENA FAINSHTEIN had no earnings<br><br>No spouse or parent had access to private insurance | YELENA FAINSHTEIN earned more than $50,000<br><br>YELENA FAINSHTEIN's employer offered insurance for her and her family |
| January 2011 Application of IGOR FAINSHTEIN | IGOR FAINSHTEIN earned approximately $18,000, and did not live with YELENA FAINSHTEIN | IGOR FAINSHTEIN earned more than $18,000, and lived with YELENA FAINSHTEIN, who earned more than $60,000 |
| August 2011 Renewal of YELENA FAINSHTEIN | YELENA FAINSHTEIN and IGOR FAINSHTEIN together earned less than $43,000 | YELENA FAINSHTEIN and IGOR FAINSHTEIN together earned at least approximately $100,000 |
| October 2011 Renewal of IGOR FAINSHTEIN | IGOR FAINSHTEIN had no earnings, and did not live with YELENA FAINSHTEIN | IGOR FAINSHTEIN had earnings, and lived with YELENA FAINSHTEIN, who earned more than $60,000 |

|  | No spouse or parent had access to private insurance | YELENA FAINSHTEIN's employer offered insurance for her and her family |
|---|---|---|
| October 2011 Application of YELENA FAINSHTEIN | YELENA FAINSHTEIN earned less than $16,000 | YELENA FAINSHTEIN earned more than $60,000 |
| April 2012 Application of IGOR FAINSHTEIN | IGOR FAINSHTEIN earned less than $14,000, and did not live with YELENA FAINSHTEIN | IGOR FAINSHTEIN earned more than $14,000, and lived with YELENA FAINSHTEIN, who earned more than $60,000 |
| July 2012 Renewal of YELENA FAINSHTEIN | YELENA FAINSHTEIN earned less than $19,000<br><br>YELENA FAINSHTEIN resided at a certain address<br><br>No spouse or parent had access to private insurance | YELENA FAINSHTEIN earned more than $70,000<br><br>YELENA FAINSHTEIN resided at a another address, where she and IGOR FAINSHTEIN owned an $800,000 residence<br><br>YELENA FAINSHTEIN's employer offered insurance for her and her family |

## The Defendants' Employment, Income, Real Property, and Wealth

10.    Based on my review of records from the New York State Department of Labor ("NYS DOL"), which maintains records of the earnings reported by employers of their employees, I have learned the following, in substance and in part:

a.    In 2008, IGOR FAINSHTEIN, the defendant, earned approximately $31,936; in 2009, he earned approximately $16,151; in 2010, he earned approximately $15,783; in 2011, he earned approximately $32,583; and in 2012, he earned approximately $8,737. These reported earnings came from working at surgical supply stores or pharmacies.

b.    In 2008, YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, earned approximately $57,839; in 2009, she earned approximately $65,790; in 2010, she earned approximately $52,817; in 2011, she earned approximately $69,962; and in 2012, she earned approximately $72,079.  These reported earnings came from working at a large health care provider, which offers radiology and nuclear imaging services (the "Health Care Provider").

-7-

11.    Based on my review of records of the City of New York, Office of the City Clerk, I have learned that IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, were married in or about April 2006.

12.    Based on my review of a mortgage application dated October 31, 2011, signed by both IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, in which the defendants applied for a $417,000 loan to purchase a residence in Belle Harbor, New York (the "2011 Residence") for $800,000, and based on my review of documents provided in support of the mortgage application by the defendants, I have learned that the defendants indicated, among other things:

a.    They were married, and had two children ("Child-1" and "Child-2"), the youngest of whom was four years old, *i.e.*, was born not later than in or about fall 2007.

b.    They had lived together for at least five years, and continued to do so.

c.    YELENA FAINSHTEIN had worked for the Health Care Provider for more than ten years, and continued to do so.  She also worked for a second health care provider (the "Second Health Care Provider"), where she had worked for more than six years, and continued to do so.  She earned more than $72,000 annually.

d.    IGOR FAINSHTEIN worked as the Vice President at a certain pharmacy (the "First Pharmacy"), where he had worked for more than seven years.  He owned 50% of the First Pharmacy, and earned more than $27,000 annually.

e.    IGOR FAINSHTEIN and YELENA FAINSHTEIN had more than $500,000 in liquid assets, including more than $400,000 in two bank accounts.

13.    Based on my review of records maintained the City of New York, I have learned that IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, purchased the 2011 Residence for $800,000 in or about October 2011.

14.    Based on my training, and my conversations with HRA, I have learned that the amount of money earned by YELENA FAINSHTEIN,

-8-

a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, alone, in at least each of years 2009 through 2012 disqualified her, and any member of her household, from receiving public health insurance.

<u>IGOR FAINSHTEIN's 2009 Fraudulent Application for Public Health Insurance</u>

15.   Based on my review of documents maintained by HRA, and my conversations with HRA, I have learned the following, in substance and in part:

a.   In an application dated January 20, 2009 (the "January 2009 Application"), IGOR FAINSHTEIN, the defendant, applied for public health insurance for himself and Child-1, who both resided at the same address ("Address-1").

b.   In response to the question on the January 2009 Application asking to list all members of the household, IGOR FAINSHTEIN listed himself, YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, and Child-1.  No other child was listed.

c.   In response to a question on the January 2009 Application as to whether YELENA FAINSHTEIN wanted public health insurance, the "No" box was checked.

d.   In response to a question on the January 2009 Application asking for income earned by all members of the household, IGOR FAINSHTEIN listed his income as $384.62 bi-weekly (that is, a little more than $10,000 a year), from working at a certain surgical supply store (the "Surgical Supply Store").  The First Pharmacy was not mentioned.  No income was listed for YELENA FAINSHTEIN.

e.   In response to a question on the January 2009 Application to explain the lack of income as to any member of the household, was written, "Family support[ed] by husband."

f.   In response to a question on the January 2009 Application asking to list all "Resources," including "money in a bank or credit union," was written "0."

g.   IGOR FAINSHTEIN signed the final page of the January 2009 Application, following a statement that read "I certify under penalty of perjury that everything on this application is the truth as best I know."

   h. The January 2009 Application was mailed to HRA's office in New York, New York, and was received by HRA on or about January 26, 2009.

   i. Based on the January 2009 Application, IGOR FAINSHTEIN and Child-1 were approved to receive public health insurance, starting on or about February 2009.

   16. I have reviewed a photocopy of the passport and social security card of IGOR FAINSHTEIN, the defendant.   The signature on the social security card of IGOR FAINSHTEIN matches the signature on the January 2009 Application.

<u>YELENA FAINSHTEIN's 2009 Fraudulent Application for Public Health Insurance</u>

   17. Based on my review of documents maintained by HRA, and my conversations with HRA, I have learned the following, in substance and in part:

   a. In an application dated October 4, 2009 (the "October 2009 Application"), YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, applied for public health insurance for herself and Child-2, who both resided at Address-1.

   b. In the October 2009 Application, YELENA FAINSHTEIN listed her current last name as "Baranovich," which was her maiden name.   In response to a question asking for her maiden name, nothing was written.

   c. In response to the question on the October 2009 Application asking to list all members of the household, YELENA FAINSHTEIN listed herself, IGOR FAINSHTEIN, the defendant, Child-1, and Child-2.

   d. In response to questions on the October 2009 Application as to whether IGOR FAINSHTEIN or Child-1 wanted public health insurance, the "No" box was checked.

   e. In response to a question on the October 2009 Application as to whether anyone in the household already received public health insurance, the "No" box was checked.

f.     In response to a question on the October 2009 Application as to whether anyone applying for public health insurance had other health insurance, the "No" box was checked.

g.     In response to a question on the October 2009 Application asking for income earned by all members of the household, YELENA FAINSHTEIN listed the income of IGOR FAINSHTEIN as $450 bi-weekly (that is, just under $12,000 a year), from working at the First Pharmacy.  The Surgical Supply Store was not mentioned.  No income was listed for YELENA FAINSHTEIN.  In response to a question on the October 2009 Application asking to explain the lack of income as to any member of the household was written, "Husband supporting family.

h.     In response to a question on the October 2009 Application asking to list all "Resources," including "money in a bank or credit union," was written "0."

i.     YELENA FAINSHTEIN signed the final page of the October 2009 Application, following a statement that read "I certify under penalty of perjury that everything on this application is the truth as best I know."

j.     In support of the October 2009 Application, YELENA FAINSHTEIN submitted a "Declaration of No Income."  In this document, she stated that her "husband" was "supporting our family." In response to a question asking for her "last job," was written "N/A."  In response to a question asking for her "last employer," was written "N/A."  YELENA FAINSHTEIN signed the Declaration of No Income, following a statement that read, among other things, "I certify that I have no other way to document the above information and that all of the above information is true and correct."

k.     The October 2009 Application, and the Declaration of No Income, was received by HRA in or about early October 2009, and was processed in New York, New York.

l.     Based on the October 2009 Application, and the document submitted in support, YELENA FAINSHTEIN and Child-2 were approved to receive public health insurance, starting in or about October 2009.

18.     I have reviewed a photocopy of the passport and social security card of YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant.  The signature on

-11-

the social security card of YELENA FAINSHTEIN matches the signature on the October 2009 Application and Declaration of No Income.

19.    Based on my review of documents provided by the Health Care Provider, I have learned that YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, has had the opportunity to receive private health insurance from the Health Care Provider, either for herself alone, or for herself and one or more family members, and received such insurance, for herself alone, from on or about July 1, 2006 until on or about January 31, 2010.    I have further learned that this coverage was canceled at the request of YELENA FAINSHTEIN in a letter dated January 6, 2010.

### The Defendants' First Fraudulent Renewals for Public Health Insurance

20.    Based on my review of the document, and my conversations with HRA, I have learned that in a document dated November 25, 2009 (the "November 2009 Renewal"), IGOR FAINSHTEIN, the defendant, certified that IGOR FAINSHTEIN and Child-1 continued to qualify to receive public health insurance.    I have further learned the following, in substance and in part:

a.    The November 2009 Renewal stated that IGOR FAINSHTEIN and Child-1 continued to live at Address-1.

b.    In response to the question on the November 2009 Renewal asking to list all members of the household, IGOR FAINSHTEIN listed himself and Child-1.    Neither YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, nor Child-2 was listed.

c.    The November 2009 Renewal stated that IGOR FAINSHTEIN earned $300.00 weekly, from working at the First Pharmacy. No income was listed for anyone else in the household.

d.    In response to a question on the November 2009 Renewal asking to list all "Resources," including "money in a bank or credit union," was written "0."

e.    In response to a question on the November 2009 Renewal asking whether anyone seeking to continue to receive public health insurance had a spouse or parent who could provide health insurance for him or her, the "no" box was checked.

f.    The final page of the November 2009 Renewal was signed following a statement that read, "I certify under penalty of perjury that everything on this application is the truth as best as I know."

g.    The November 2009 Renewal was mailed to HRA's office in New York, New York.

21.    Based on my review of the document, and my conversations with HRA, I have learned that in a document dated July 15, 2010 (the "July 2010 Renewal"), YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, certified that YELENA FAINSHTEIN and Child-2 continued to qualify to receive public health insurance.  I have further learned the following, in substance and in part:

a.    The July 2010 Renewal stated that YELENA FAINSHTEIN and Child-2 continued to live at Address-1.

b.    In response to the question on the July 2010 Renewal asking to list all members of the household, YELENA FAINSHTEIN listed herself and Child-2.   Neither IGOR FAINSHTEIN, the defendant, nor Child-1, was listed.

c.    In response to a question on the July 2010 Renewal asking for income earned by all members of the household, nothing was written.  Rather, the July 2010 Renewal stated that YELENA FAINSHTEIN was "living on cash savings," in the amount of "$5,000."

d.    In response to a question on the July 2010 Renewal asking whether anyone seeking to continue to receive public health insurance had a spouse or parent who could provide health insurance for him or her, the "no" box was checked.

e.    The final page of the July 2010 Renewal was signed following a statement that read, "I certify under penalty of perjury that everything on this application is the truth as best as I know."

f.    The July 2010 Renewal was mailed to a United States Postal Service Post Office Box ("P.O. Box") in Brooklyn, New York maintained on behalf of HRA.

-13-

<u>IGOR FAINSHTEIN's 2011 Fraudulent Application for Public Health</u>
<u>Insurance</u>

22.    Based on my training and experience, and my review
of documents, I have learned that by in or about the end of 2010,
the public health insurance received by IGOR FAINSHTEIN, the
defendant, and Child-1, pursuant to the January 2009 Application and
the November 2009 renewal expired, because it was not renewed timely.

23.    Based on my review of documents maintained by HRA,
and my conversations with HRA, I have learned the following, in
substance and in part:

a.    In an application dated January 9, 2011 (the
"January 2011 Application"), IGOR FAINSHTEIN, the defendant, applied
for public health insurance for himself and Child-1, who both resided
at the same address ("Address-2").

b.    In response to the question on the January 2011
Application asking to list all members of the household, IGOR
FAINSHTEIN listed himself and Child-1.  Neither YELENA FAINSHTEIN,
a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein,"
the defendant, nor Child-2, was listed.

c.    In response to a question on the January 2011
Application asking for income earned by all members of the household,
IGOR FAINSHTEIN listed his income as $1,500 monthly, from working
at the First Pharmacy.  No income was listed for anyone else in the
household.

d.    The final page of the January 2011 Application
was signed following a statement that read, "I certify under penalty
of perjury that everything on this application is the truth as best
as I know."

e.    The January 2011 Application was received by HRA
in or about early January 2011, and was processed in Brooklyn, New
York.

f.    Based on the January 2011 Application, IGOR
FAINSHTEIN and Child-1 were approved to receive public health
insurance, starting in or about early January 2011.

The Defendants' Second Fraudulent Renewals for Public Health
Insurance

24.    Based on my review of the document, and my
conversations with HRA, I have learned that in a document dated
August 10, 2011 (the "August 2011 Renewal"), YELENA FAINSHTEIN, a/k/a
"Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the
defendant, certified that YELENA FAINSHTEIN and Child-2 continued
to qualify to receive public health insurance.  I have further
learned the following, in substance and in part:

a.    The August 2011 Renewal stated that YELENA
FAINSHTEIN and Child-2 lived at Address-2.

b.    In response to questions on the August 2011
Renewal asking to list all members of the household, YELENA
FAINSHTEIN listed herself, IGOR FAINSHTEIN, the defendant, Child-1,
and Child-2.

c.    In response to a question on the August 2011
Renewal asking for income earned by all members of the household,
YELENA FAINSHTEIN stated that she earned $1,000 bi-weekly, from
working for the Health Care Provider, and IGOR FAINSHTEIN earned $650
bi-weekly, from working at the First Pharmacy.  In sum, the August
2011 Renewal stated that the household earned under $43,000 annually.

d.    The August 2011 Renewal was electronically
signed by "dushka[four numbers]" (the "Account Name") and was
electronically submitted to HRA's offices in New York, New York.

25.    Based on my review of the document, and my
conversations with HRA, I have learned that in a document dated
October 17, 2011 (the "October 2011 Renewal"), IGOR FAINSHTEIN, the
defendant, certified that IGOR FAINSHTEIN and Child-1 continued to
qualify to receive public health insurance.  I have further learned
the following, in substance and in part:

a.    The October 2011 Renewal stated that IGOR
FAINSHTEIN and Child-1 lived at Address-2.

b.    In response to the question on the October 2011
Renewal asking to list all members of the household, IGOR FAINSHTEIN
listed himself and Child-1.  Neither YELENA FAINSHTEIN, a/k/a
"Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the
defendant, nor Child-2, was listed.

-15-

        c.    In response to a question on the October 2011 Renewal asking for income earned by all members of the household, nothing was written.  Rather, the October 2011 Renewal stated that IGOR FAINSHTEIN was living on "cash savings," in the amount of "$6,800."

        d.    In response to a question on the October 2011 Renewal asking whether anyone seeking to continue to receive public health insurance had a spouse or parent who could provide health insurance for him or her, the "no" box was checked.

        e.    In response to a question on the October 2011 Renewal asking whether the applicant owned or co-owned his or her home, the "no" box was checked.

        f.    The final page of the October 2011 Renewal was signed following a statement that read, "I certify under penalty of perjury that everything on this application is the truth as best as I know."

        g.    The October 2011 Renewal was mailed to the P.O. Box.

<u>YELENA FAINSHTEIN's 2011 Fraudulent Application for Public Health Insurance</u>

        26.    Based on my review of documents maintained by HRA, and my conversations with HRA, I have learned that, in or about October 2011, HRA terminated the public health insurance received by YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, and the Child-2, on the ground that YELENA FAINSHTEIN's true income was higher than the eligibility limit.

        27.    Based on my review of documents maintained by HRA, and my conversations with HRA, I have learned the following, in substance and in part:

        a.    In an application dated October 27, 2011 (the "October 2011 Application"), YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, re-applied for public health insurance for herself and Child-2, who both resided at Address-2.

        b.    In response to the question on the October 2011 Application asking to list all members of the household, YELENA

FAINSHTEIN listed herself and Child-2.  Neither IGOR FAINSHTEIN, the defendant, nor Child-1, was listed.

        c.    In response to a question on the October 2011 Application asking for income earned by all members of the household, YELENA FAINSHTEIN listed her income as $600 bi-weekly, from working for the Health Care Provider.

        d.    The final page of the October 2011 Application was signed following a statement that read, "I certify under penalty of perjury that everything on this application is the truth as best as I know."

        e.    In support of the October 2011 Application, YELENA FAINSHTEIN submitted what appeared to be a pay stub (the "October 2011 Pay Stub"), purporting to be from the Health Care Provider, indicating that she earned $600 bi-weekly, as the October 2011 Application stated.

        f.    The October 2011 Application was received by HRA in or about October 2011, and was processed in New York, New York.

        g.    Based on the October 2011 Application, YELENA FAINSHTEIN and Child-2 were approved to receive public health insurance, starting in or about October 2011.

        28.   Based on my review of documents, I have learned that the October 2011 Pay Stub was fake or doctored.  The actual pay stub from the Health Care Provider, for the same period of time, indicates that YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, earned $2,800 bi-weekly, not $600 bi-weekly, and lived at the 2011 Residence, not Address-2.

## IGOR FAINSHTEIN's 2012 Fraudulent Application for Public Health Insurance

        29.   Based on my training and experience, and my review of documents, I have learned that by in or about the end of 2011, the public health insurance received by IGOR FAINSHTEIN, the defendant, and Child-1 expired, because it was not renewed timely.

        30.   Based on my review of documents maintained by HRA, and my conversations with HRA, I have learned the following, in substance and in part:

a.     In an application dated April 22, 2012 (the "April 2012 Application"), IGOR FAINSHTEIN, the defendant, re-applied for public health insurance for himself and Child-2, who both resided at the 2011 Residence.

b.     In response to the question on the April 2012 Application asking to list all members of the household, IGOR FAINSHTEIN listed himself and Child-1.   Neither YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, nor Child-2, was listed.

c.     In response to a question on the April 2012 Application asking for income earned by all members of the household, IGOR FAINSHTEIN listed his income as approximately $1,153 monthly, from working at the First Pharmacy.

d.     The final page of the April 2012 Application was signed following a statement that read, "I certify under penalty of perjury that everything on this application is the truth as best as I know."

e.     The April 2012 Application was received by HRA in or about October 2011, and was processed in Brooklyn, New York.

f.     Based on the April 2012 Application, IGOR FAINSHTEIN and Child-1 were approved to receive public health insurance, starting in or about April 2012.

## YELENA FAINSHTEIN's Third Fraudulent Renewal for Public Health Insurance

31.   Based on my review of the document, and my conversations with HRA, I have learned that in a document dated July 4, 2012 (the "July 2012 Renewal"), YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, certified that she and Child-2 continued to qualify to receive public health insurance, and lived at Address-2.   I have further learned the following, in substance and in part:

a.     In response to the question on the July 2012 Renewal asking to list all members of the household, YELENA FAINSHTEIN listed herself and Child-2.   Neither IGOR FAINSHTEIN, the defendant, nor Child-1, was listed.

b.     In response to a question on the July 2012 Renewal asking for income earned by all members of the household,

YELENA FAINSHTEIN stated that she earned $350 weekly, from working for the Health Care Provider.

        a.    In response to a question on the July 2012 Renewal asking whether anyone seeking to continue to receive public health insurance had a spouse or parent who could provide health insurance for him or her, the "no" box was checked.

        b.    The July 2012 Renewal was mailed to the P.O. Box.

IGOR FAINSHTEIN's Application For One Of His Pharmacies To Accept Public Health Insurance, and His Termination Of His Own Public Health Insurance

        32.    Based on my review of documents, I have learned the following, in substance and in part:

        a.    In an application dated August 21, 2012 (the "May 2012 Pharmacy Application"), IGOR FAINSHTEIN, the defendant, on behalf of a certain pharmacy in New York, New York (the "Second Pharmacy"), applied to New York State for the Second Pharmacy to be authorized to bill Medicaid for drugs or other items purchased from the Second Pharmacy by Medicaid recipients.

        b.    The August 2012 Pharmacy Application stated that IGOR FAINSHTEIN was co-owner of the First Pharmacy.

        c.    The August 2012 Pharmacy Application stated that IGOR FAINSHTEIN was also the co-owner of the Second Pharmacy, and served as its President.

        33.    Based on my review of documents, I have learned that learned that, on or about December 6, 2012, New York State denied the Second Pharmacy's application, on the ground that IGOR FAINSHTEIN, the defendant, had not reported to HRA his income as co-owner of the Second Pharmacy.

        34.    Based on my review of documents and my conversations with HRA, I have learned that, on or about December 20, 2012, IGOR FAINSHTEIN, the defendant, terminated his receipt of public health insurance.

<u>YELENA FAINSHTEIN's Application for Private Insurance For Her Family</u>
<u>Through Her Employer, After HRA Terminates Her Public Health</u>
<u>Insurance</u>

   35. Based on my review of documents and my conversations with HRA, I have learned that, on or about November 23, 2012, HRA terminated the public health insurance of YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, after determining that she was ineligible for such insurance based on the true facts about her income.

   36. Based on my review of documents, I have learned that, on or February 24, 2013, YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendant, applied for private health insurance through the Health Care Provider for herself, IGOR FAINSHTEIN, the defendant, Child-1, and Child-2. In her paperwork, YELENA FAINSHTEIN listed "Account Name@[a certain email provider]" as her email address, and listed the 2011 Residence as her residence and the residence of her husband and both children.

<u>Summary of Review of Financial Records</u>

   37. Based on my training and experience and my review of financial records, I have learned the following, in substance and in part:

   a. IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, have maintained at least one bank account since at least in or about 2006, and have maintained bank accounts at multiple banks.

   b. At least one bank account of the First Pharmacy was used to make multiple payments, in at least 2010, on a mortgage taken out by YELENA FAINSHTEIN in connection with the purchase of the residence at Address-2, where IGOR FAINSHTEIN and YELENA FAINSHTEIN lived before purchasing the 2011 Residence.

   c. At least one bank account of the First Pharmacy was used to write multiple checks made out to IGOR FAINSHTEIN personally, in at least 2011, totaling at least $40,000, which were then deposited into a personal bank account of IGOR FAINSHTEIN and YELENA FAINSHTEIN.

   d. On multiple occasions, cash has been deposited into and/or withdrawn from bank accounts of IGOR FAINSHTEIN and YELENA FAINSHTEIN in a pattern consistent with an attempt to avoid

-20-

the filing of a Currency Transaction Report (commonly referred to as a "CTR"), which financial institutions are required to file in connection with deposits or withdrawals in excess of $10,000 in cash. For example, $24,000 in cash was deposited into a bank account of the defendants in three days in February 2011, in the form of a $9,000 cash deposit on February 22, a $9,000 cash deposit on February 24, and a $6,000 cash deposit on February 25.

### The Approximate Loss Caused by the Defendants

        38.   Based on my review of documents provided by HRA, I have learned that more than $58,000 in claims were paid by public health insurance for medical services used by IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, Child-1, and Child-2, between in or about January 2009 and in or about December 2012.

        WHEREFORE, deponent respectfully requests that warrants be issued for the arrest of IGOR FAINSHTEIN and YELENA FAINSHTEIN, a/k/a "Yelena Baranovich," a/k/a "Yelena Baranovich-Fainshtein," the defendants, and that they be imprisoned, or bailed, as the case may be.

                                    _____
                                    VITALY ZUBRY
                                    Special Agent
                                    HHS-OIG

Sworn to before me this
20th day of February 2015

_____
THE HONORABLE HENRY B. PITMAN
United States Magistrate Judge
Southern District of New York

-21-